MARÍA T. ROBLES OSTOLAZA, Plaintiff and Appellant, *v.* UNIVERSITY OF PUERTO RICO and FEDERAL INSURANCE COMPANY, Defendants and Appellees.

No. R-66-133.        Decided October 14, 1968.

---

*Ramírez, Tirado & Marchand* and *Jorge Segarra Olivero* for appellant. *Francisco Ponsa Feliú* and *Wilson Colberg* for appellees.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Is the compensation received by a spouse for personal injury separate or community property? This is the question to be determined in this case.

Appellant filed a complaint for damages against the University of Puerto Rico, a public entity of higher education with authority to sue and to be sued.[1] She also brought suit against the insurance company.

---

[1] Act No. 1 of January 20, 1966; 18 L.P.R.A. § 602(f).

The defendants filed a motion to dismiss which was granted by the trial court. The court relied on the fact that the plaintiff, being married and having brought suit in her own name, did not have a cause of action because it corresponded to the conjugal partnership. The trial court rendered judgment on the basis of the case law existing then in Puerto Rico on that question. We issued the writ to reexamine same. We had formerly intimated that we would do so at the proper time.[2]

Since in our positive law there is no express provision to decide the question raised herein and as we have under our consideration a concrete case to decide, here we have a clear example of a situation where the jurisprudential elaboration of law is necessary and legitimate in order to fill a gap in the statute.[3]

More than a generation ago, in 1920, in *Vázquez v. Valdés et al.*, 28 P.R.R. 431 (Wolf), this Court decided for the first time the question raised herein. It was concluded therein that that compensation was community property. We have followed that decision in a great number of cases. We are convinced that that was an error. We turn to explain.

This matter is governed by Chapter 273 of Title 31 of L.P.R.A. which deals with the Conjugal Partnership.[4] As

---

[2] *Gallart, Mgr.* v. *Banco Popular*, 91 P.R.R. 795 (1965) ; *Gallart Mendía* v. *González Marrero*, 95 P.R.R. 196 (1967) (footnote 4).

[3] Civil Code, § 7, 31 L.P.R.A. § 7; Justiniano, *Instituta*, Book III, tit. 24, par. 5 (533) ; Castán, *La Formulación Judicial del Derecho* (1954) ; Cardozo, The Nature of the Judicial Process 14 (1921) ; Castán, *Teoría de la Aplicación e Investigación del Derecho* 301–344 (1947) ; Friedmann, Legal Theory, Chap. 32, 4th ed. (1960) ; Stone, Julius, The Province and Function of Law 150 (1961) ; Del Vecchio, *Filosofía del Derecho* 344, 7th ed. (1960) ; Esser, *Principio y Norma en la Elaboración Jurisprudencial del Derecho Privado* 321 (1961) ; Recasens Siches, *Vida Humana, Sociedad y Derecho* 282 and 319–324, 2d ed. (1945) ; Pound, Law Finding Through Experience and Reason (1960) ; Puig Brutau, *La Jurisprudencia Como Fuente del Derecho* 188; Paton, Jurisprudence 166–167 (1951).

[4] Said chapter corresponds to Chapter IV of Title III of Book IV of the Civil Code of Puerto Rico, 1930 ed.; 31 L.P.R.A. §§ 3621–3701.

it is known the Civil Code was not improvised, but it was the product of a painstaking creative effort initiated in the courts of Cádiz, taken into the Constitution of 1812 and which became a reality in the Spanish Civil Code of 1889.[5] Our Code is the Spanish Civil Code which was extended to Puerto Rico that same year 1889 by a royal decree of the Queen Regent María Cristina.[6] The Civil Code is a harmonious legal body; many of its provisions are interrelated and its articles should be read and interpreted as a whole. Thus, for example, insofar as the conjugal partnership is concerned, what is not provided by Chapter 273 of the Code is not necessarily a question of *casus omissus*, since the Code itself provides in its § 1298 (31 L.P.R.A. § 3624) that "The conjugal partnership shall be governed by the rules of articles of partnership in all that does not conflict with the express provisions of this chapter."

From a thoughtful reading of the whole Chapter 273 it appears that it deals with the property which is subject to entering into the commerce between individuals: personal property or real estate, money, rents, cattle, etc. Since we are acquainted with the Spanish society which produced that code and ours which adopted it we have to conclude that the lawmaker did not include nor intended to include the body of the married woman, or of the husband, as the case may be, as a property subject to dealings between individuals. This is already one reason for thinking that the compensation received as the monetary equivalent of a lost or injured member of the body should be separate and not community property.

---

[5] I-I Castán, *Derecho Civil Español, Común y Foral* 173–180, 10th ed. (1962) ; I Puig Peña, *Compendio de Derecho Civil Español* 16–17 (1966) ; I De Castro, *Derecho Civil de España* 185–198 (1949) ; I Puig Peña, *Tratado de Derecho Civil Español* 149–171 (1957).

[6] The text of the royal decree can be seen in I Manresa, *Comentarios al Código Civil Español* 75, 6th ed. (1943).

However, we acknowledge that although the physical body of the spouses is not subject to dealings between individuals, the monetary compensation, or its equivalent, obtained for personal injuries is subject thereto. That is why it is lawful to resort to the provisions of the Code in order to determine, either by the reading and application of the written rule, if any, or by filling the gap, in default thereof, whether such compensation is separate or community property.

Said Chapter 273 indicates which property is to be considered community and which the separate property of each spouse. But, as we have already mentioned, it does not specify how to designate the compensation received for personal injuries to the spouses.

After defining the conjugal partnership and indicating when it begins and ends, the Code in its § 1299 (31 L.P.R.A. § 3631) provides that the following is the separate property of each spouse:

"(1) That brought to the marriage as his or her own.
"(2) That acquired by either of them during the marriage by lucrative title, that is to say, by gift, legacy or descent.
"(3) That acquired by right of redemption or by exchange for other property belonging to one of the spouses only.
"(4) That bought with money belonging exclusively to the wife or to the husband."

The Code indicates, further, in its § 1301 (31 L.P.R.A. § 3641) that the following is property of the conjugal partnership:

"(1) Property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only.
"(2) That obtained by the industry, salaries, or work of the spouses or of either of them.
"(3) The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses."

In order to settle the possible controversies which may arise on whether the property with which said Chapter 273 of the Code deals is separate or community property, the Code in its § 1307 establishes the following presumption:

"All the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife." 31 L.P.R.A. § 3647.

■ The error of commission in *Vázquez* v. *Valdés, supra,* consisted in that upon finding that the compensation received for personal injuries of a spouse was not included either in § 1299 (separate property) or in § 1301 (community property) it was concluded that it was "necessarily community property." In order to reach that conclusion the presumption of § 1307 (formerly § 1322) was used. The controvertible presumption was turned there into a conclusive presumption, which was not, considering the terms of § 1307, logically necessary and was in addition juridically erroneous.[7] The presumption of community property of § 1307 subsists "until it is proven" otherwise. On that particular Castán states:

"For the purpose of settling the doubts which may easily arise as to the origin and character of certain property belonging to the married couple . . . the legislation establishes the suppletory rule that their property is considered as community property until it is proven . otherwise." V-I *Derecho Civil Español, Común y Foral* 264–265, 8th ed. (1960).

---

[7] Another error committed in *Vázquez* v. *Valdés, supra,* has been cured. "Without stopping to inquire" it was said therein that "it is plain" that § 54 of the Code of Civil Procedure then in force was not applicable to an action belonging to the community. Said § 54 expressly provides that a married woman does not need the concurrence of her husband in order to litigate when she is living separate and apart from him by reason of his desertion of her. Subsequently the Court investigated carefully and reading said § 54 ratified that a married woman under those circumstances may sue alone notwithstanding the community character of the action brought by her. *Vázquez* v. *P.R. Ry., Lt. & P. Co.,* 35 P.R.R. 59, 74 (1926).

In the same sense see IV Borrell y Soler, *Derecho Civil Español* 434 (1954); IV Espín, *Manual de Derecho Civil Español* 185 (1963); IX Manresa, *Comentarios al Código Civil Español* 569, 5th ed. (1950); IV Valverde, *Tratado de Derecho Civil Español* 368, 4th ed. (1938), and VIII Planiol and Ripert, *Tratado Práctico de Derecho Civil Francés* 203 (1938).

Commenting on § 1407 equivalent to our § 1307, Scaevola, in agreement with the others herein cited, explains that "it shall not be understood that, for the mere fact that doubts exist, the property should be considered as community property" and, of course, he adds that the presumption of the aforecited section is applicable to those cases where evidence to the contrary is missing. 22 *Código Civil* 447, 2d ed. (1967) (at p. 233 in the 1st ed.).

■ As it may be seen, § 1307 has no other effect than to impose the burden of proof upon the spouse who claims certain property belonging to the community as his or her own. It is a rule of evidentiary but not of substantive character. Its inclusion in the Code did not have the purpose of establishing that any property the classification of which has not been previously determined shall be classified as community property, but of establishing that it is necessary to show the separate nature of any property claimed to be so.

The presumption established by § 1307 not being conclusive, as we have seen, but merely controvertible, and the origin of the compensation for personal injury being known, how shall we classify it, separate or community property?

The error which we might call of omission made in *Vázquez* v. *Valdés, supra,* and from which followed the error of commission aforementioned, consisted in that it was overlooked that in the Spanish Civil Code and in ours no provision was made for a universal community of property

but there was established only a conjugal partnership. That is why, marriage in Puerto Rico has not the effect of merging in a common mass the separate property of each spouse, but each keeps his or her own. The conjugal partnership of our Code is, as its name indicates, a partnership for gain, for profit.[8]

Before going further, let us clear the way by disposing of the following. In *Vázquez* v. *Valdés, supra,* since no solution was found to be given in the written law or in the case law of the country and since an autochthonous one was not produced, the eyes were turned toward "the authorities taken from the [United] States where a conjugal partnership exists," and then McKay, Community Property, §§ 180–181, is cited.

In the first place, the aforesaid author, as it is to be expected, goes back to discuss the origin of the doctrines of the Anglo-Saxon common law which constitute the background of subsequent judicial decisions in that law. Keeping in mind the historical and juridical origin of the concept of property in the Anglo-American law of feudal origin and of the concept of property in the civil law of Roman origin, one realizes that that was not the way to solve a problem of interpretation and application of the Civil Code. It would have been more proper, since an institution of civil law is involved, to seek enlightenment in the continental European civil doctrine and case law.

In the second place, the laws of those States to which our eyes were turned on that occasion were different from the Puerto Rican law. There, the laws, after enumerating the separate property, provided that *all other property* was com-

---

[8] See as to the different communities of property as a result of marriage, V-I Castán, *Derecho Civil Español, Común y Foral* 209–224, 8th ed. (1960).

munity property.[9] In Puerto Rico, on the contrary, the law does not provide that, after enumerating the separate property all the other property shall be community property, but it considers the same to be community property until it is proven otherwise. Civil Code, § 1307.

In the third place, author McKay himself maintains the contrary of what was decided in *Vázquez* v. *Valdés, supra*. In the preface of his work he points out that the doctrine that a cause of action for the wife's personal injury belongs to the community is breaking down (this in the year 1925!).[10] He indicates therein how "the injustice" had been corrected in Louisiana and Texas. And in § 398 of the same work the author shows plainly that he is against the ancient rule of common law and maintains that the compensation for personal injury to a spouse should be considered as a separate right.

After examining those antecedents and placing the problem in its perspective we turn to set forth the grounds for our decision.

The purpose of compensation is to remedy the damage caused. Since it cannot be made in kind it is made by paying its equivalent in money. It is a compensation given for having violated the person's right to his physical integrity and security. There is hardly a more personal right than the right of every human being to his personal integrity. It is in this sense, as we shall see hereinafter, that the rule is pronounced.

A Puerto Rican attorney has clearly expressed this position:

---

[9] See 2 De Funiak, Principles of Community Property (1943), App. V: *Laws of American States*, specifically the following pages: 531, Arizona Law; 536, California Law; 550, Ohio Law; 558, Louisiana Law; 574, Nevada Law; 582, New Mexico Law; 590, Oklahoma Law; 596, Oregon Law; 608, Texas Law; 614, Washington Law.

[10] Community Property, 2d ed. (1925).

"In order that something may pass to form part of the conjugal partnership, it must be a gain or a profit, since the conjugal partnership is one of benefits, gains, profits. Is the compensation for personal injury a gain or a profit? Obviously it is neither. Compensation is essentially remedial. If the restitution of the injured member could be ordered, that would be the compensation imposed on the wrongdoer. But since as a general rule an actual repair is not possible, that is, a restoration *in integrum* of the primitive state of things prior to the wrongful act, the damage caused must be compensated in some manner. This is attained by reducing to pecuniary equivalents the injured moral and material values. That is to say, the pecuniary compensation for the personal injuries suffered is an indirect manner of restoring the thing damaged."[11]

Colin and Capitant write:

"When one of the spouses is the victim of an accident, the compensation he is entitled to receive from the liable wrongdoer, or else the money which the insurance company should pay, does it go into the common fund or does it continue to be the separate property of the creditor spouse? The Court of Cassation, which took cognizance of this matter insofar as damages were concerned, decided it in the sense of excluding it from the community (citations omitted) bearing in mind a reason which we deem to be decisive, namely, that the compensation represents the loss of activity, aptitude for work, caused by the accident. And this activity is essentially personal, peculiar of the spouse, not susceptible of going into the common fund. The community shall take advantage of the rents of the compensation just as it takes advantage of the products of the spouse's work, but not of the capital."[12]

For a similar expression see II-I Puig Peña, *Tratado de Derecho Civil Español* 300 (1953).

Planiol and Ripert consider as the best doctrine that established by the Court of Cassation in establishing that

---

[11] Bernier, *Las Acciones de Daños y Perjuicios Extracontractuales en la Sociedad de Gananciales*, 20 *Rev. Jur. U.P.R.* 172–222, at p. 202 (1950). This work constitutes the most complete and persuasive expression we have seen on this matter.

[12] 6 *Curso de Derecho Civil* 262, Spanish translation, 3d ed. (1955).

the indemnity paid to a spouse as a victim of an accident is a separate property. It considers that in such cases the indemnity compensates an exclusively personal injury.[13] Scaevola indicates that property received by any of the spouses through a "very personal title" or the property substituted for the property individually owned does not disappear into the community.[14] In harmony with that expression it can be argued that the cause of action to recover damages for a personal injury is of a personal or very personal nature and that the compensation for personal injury is separate.[15]

Josserand also favors the aforementioned doctrine of the Court of Cassation in the sense that compensation is a personal and not a community property. He states that:

".. . it is considered that indemnity represents the person of the victim himself, his health, corporal integrity, which are not, evidently, subject to go into the community."[16]

Enneccerus, Kipp, and Wolf, like Scaevola, exclude from the community the property obtained through a very personal title.[17]

McKay decidedly pronounces himself in favor of the separate character of the compensation in these cases. He relies principally on the reason, shared by nearly all the authors, that the right to personal security is an intensely personal right and consequently the cause of action and the compensation received are also personal.[18] Pitler writes in the same sense. Arguing as to the personal nature of the injury and of the compensation, this author indicates, rightly, that each spouse brings his or her body to the marriage but,

---

[13] 8 *Tratado Práctico de Derecho Civil Francés* 265–267 (1938).

[14] 22 *Código Civil* 155, 2d ed. (1967) 1st ed. at p. 28.

[15] Already in *Travieso* v. *Del Toro*, 74 P.R.R. 940, 945 (1953), we characterized as a "direct and personal action" the right of action for death.

[16] III-I *Derecho Civil* 30 (1951).

[17] IV-I *Tratado de Derecho Civil* 435, Spanish translation, 2d ed. (1953).

[18] *Community Property*, § 398, 2d ed. (1925).

on its dissolution, takes it away. He calls the old rule which considered the action and the compensation community property, a social lag.[19]

In Puerto Rico, besides Bernier, Professors Herrera and Guaroa Velázquez have dealt specifically with this problem. The three authors favor the doctrine which considers the compensation received in these cases as separate property.[20]

The French case law is abundant and maintains the same view which we hold here.[21]

The foregoing emphasizes the argument of intrinsic justice which leads the courts and the doctrine to conclude that the compensation received by a spouse for personal injuries is of a separate nature. Hereinafter we set forth another argument of substantial justice also, but which in addition contains an argument of economic justice. The authors indicate that among the elements of the assets and liabilities of the conjugal partnership there exists an equitable correlation the purpose of which is to prevent economical injustices in the operation of the partnership.[22]

The foregoing is appreciated when the sections of the Code which govern the matter are examined. For example, § 1308(2) establishes that the conjugal partnership shall be liable for the arrears of interest, matured during the marriage, of obligations which affect the private property of the spouses as well as the partnership property. This liability is compensated by § 1301(3) which provides that the fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or

---

[19] 31 Chi. Kent L. Rev. 251 (1953).

[20] Herrera, *La Mujer Casada y la Acción Por Daños y Perjuicios*, 34 *Rev. Jur. U.P.R.* 397 (1965); II Velázquez, *Obligaciones y Contratos* 128 (1942). Herrera's work has a rich collection of common law jurisprudence.

[21] See the cases cited in Planiol and Ripert, *op. cit.* at 265; Josserand, *op. cit.* at 30, and Colin and Capitant, *op. cit.* at 262.

[22] Scaevola, *op. cit.* at 473–477 and 508, 2d ed. (1967; Velázquez, *op. cit.* at 128; Bernier, *op. cit.* at 216.

from that which belongs to either one of the spouses are community property. Likewise § 1308(5) holds the conjugal partnership liable for the support of the family and the education of the children. This liability is compensated by the provisions of § 1303 which provides that the fruits and interest drawn from the usufruct which the spouses have in the property of their children belong to the conjugal partnership. Since this can be easily established we believe that it is unnecessary, and moreover it would be tedious, to relate all the examples contained in the aforesaid Chapter 273 of the Code.[23]

That equitable correlation, so rightly maintained by the Code, had been infringed by the decision in *Vázquez* v. *Valdés*, *supra*.

■ As we have formerly indicated failure to make any provision in Chapter 273 of the Code concerning the conjugal partnership does not necessarily mean that the matter is devoid of regulation, since § 1298 provides that the conjugal partnership shall be governed by the rules of articles of partnership in all that does not conflict with the express provisions of said Chapter 273. With respect to this matter it should be noted that not even under the ample assumption of the articles of general partnership, the compensation for personal injury could be considered as community property since in regulating the articles of partnership the Code provides in its § 1567 (31 L.P.R.A. § 4322) that "Articles of general copartnership executed without specifying its nature only constitute a general partnership of profits." As it is known, amounts received as compensation for damages are not profits and are not subject to income tax.[24]

---

[23] In Bernier's work, aforementioned, at pp. 214–216, more examples of the foregoing and several authorities are cited.

[24] *Hawkins* v. *Commissioner*, 6 B.T.A. 1023; *McDonald* v. *Commissioner*, 9 B.T.A. 1340; *Farmers' & Merchants' Bank* v. *Commissioner*, 59 F.2d 912; Income Tax Act, 13 L.P.R.A. § 3022(5).

The Code provides also that the general partnership of profits (and remember that the marriage community in Puerto Rico is not a universal community of property but a conjugal partnership) includes all that the partners may acquire "by their industry or work" and it specifies that the personal or real property which each of the partners may possess at the time of the execution of the agreement shall continue to be their private property. Only the usufruct passes to the partnership. Section 1566; 31 L.P.R.A. § 4321. This is consistent with the situation of the conjugal partnership where the separate property continues to be separate but its fruits and income are community property. Section 1301. Continuing that line of thought it may be reasoned that in the conjugal partnership the property acquired through the spouses' work is community but not so the person of each one. If the property purchased by a spouse with his own money and that acquired by exchanging a property of his own is separate property, why should the compensation received in exchange for an arm, an eye, a leg not be considered as such?

In deciding that the compensation in these cases is separate we are curing the inferior juridical position which the married woman in Puerto Rico had in this respect. Let us explain: if a married woman was injured, the husband, as administrator of the conjugal partnership, could determine by himself alone that the wrongdoer was not negligent and could refuse to file the action. On the other hand, the husband, also as administrator of the conjugal partnership, could compromise the action and accept an amount less than the one which in justice should be paid. In a third hypothesis, even though an adequate compensation was received, the husband could use it in a manner which would not benefit the injured wife or he could lose it in gambling. In another hypothesis, after obtaining adequate compensation, half thereof could be granted to the husband upon dissolution of the marriage

by divorce. Finally, the prejudiced woman would receive only one half if the husband died first, for then, one half of the compensation would be inherited by his forced heirs.

■ For the reasons stated we decide that the compensation received by a spouse for physical and moral damages is property of a separate nature.[25] However, the right which the conjugal partnership may have to bring an action for damages would subsist provided the facts of the particular case justify it and it is timely brought.

The order object of this petition for review, entered by the Superior Court, San Juan Part, on April 14, 1966, will be reversed and the case remanded for further proceedings consistent with this opinion.

As a result of our present decision it is necessary to overrule and we hereby overrule the cases of *Vázquez* v. *Valdés,* 28 P.R.R. 431 (1920); *Vázquez* v. *P.R. Ry., L. & P. Co.,* 35 P.R.R. 59 (1926); *Flit* v. *White Star Bus Line,* 49 P.R.R. 139 (1935); *Clos* v. *García,* 43 D.P.R. 1042 (1932). The statements inconsistent with this opinion, made in the cases of *Serrano* v. *González,* 68 P.R.R. 579 (1948); *Serra* v. *Transportation Authority,* 68 P.R.R. 581 (1948); *Meléndez* v. *Iturrondo,* 71 P.R.R. 56 (1950); *Echevarría* v. *Despiau,*

---

[25] Plaintiff, answering an interrogatory served on her by defendant, stated, in part, as follows:

"The orthopedist examined me and gave me a prescription and ordered me to stay in bed for five days and to use crutches to move around the house when strictly necessary since I had an infection reaching the knee fluid. The bruise was healed but the pain in the hip continued. On the fifth day I went to see the doctor, and when I got into the car and started to go backwards I noticed that I could hardly move the neck towards the left and back because of the pain. At the doctor's office it was decided, on account of the pain, that I had a loose cartilage in the knee as a result of the blow and that the pain on the neck and hip had to be investigated and therefore I had to be hospitalized and so I did. On May 20, 1964 I was hospitalized at Hospital del Maestro where I remained for 53 days. I spent about five or six weeks in absolute rest without leaving the bed at all. Then they discovered a discal hernia which was operated on. I was given therapeutic treatment, etc. . . ."

72 P.R.R. 442 (1951); and *Vega* v. *Cía. Popular de Transporte*, 72 P.R.R. 491 (1951), will also be overruled. We decide so because, as it is seen from the foregoing discussion, we are not merely concerned here with a procedural question but with a substantive question of cause of action.

We believe it is convenient to explain that the actions which have been brought to date by the conjugal partnership, or by the husband as administrator of the conjugal partnership, to recover damages sustained by any of the spouses, shall not be dismissed on that ground. However, in the judgments to be rendered, the compensation which should be granted will be adjudicated to the corresponding spouse in accordance with this decision.

Mr. Justice Santana Becerra concurs in the result in a separate opinion.

—O—

Mr. Justice Santana Becerra concurring only in the result.

San Juan, Puerto Rico, October 14, 1968

The complaint for damages does not state the civil status of the plaintiff, María T. Robles Ostolaza. To an interrogatory of the defendant, which is included in the record, asking her to give her age, civil status, and exact address, the plaintiff answered: "38 years old, married." On this bare fact the trial court decided the substantive right of the parties dismissing the complaint without going to the merits.

The sole expression in the record that the plaintiff is married, without more, did not inevitably determine the substantive right involved.

Section 91 of the Civil Code, 1930 ed., provides that the husband shall be the administrator of the conjugal property, *except when stipulated otherwise*. This rule is reaffirmed by the Code in its § 1312, excepting expressly the foregoing exception.

Rule 15.3 of the Rules of Civil Procedure of 1958 provides that a married woman needs *"the consent"* of her husband except: ". . . (c) When she is living separate and apart from her husband by reason of desertion of either spouse."[1]

Pursuant to the foregoing provisions of law a woman, merely because she is married, is not barred from suing in connection with an interest which belongs or affects that body of property or familiar economic unity, *sui generis*, called conjugal partnership.[2] However, she needs *"the consent"* of her husband, and if the point of fact were that of the exception indicated, she does not even need it. In *Fernández* v. *Condado Beach Hotel*, 72 P.R.R. 880 (1951), this Court through the then Mr. Chief Justice Todd, Jr., stated as follows:

"In countless cases we have repeatedly held that a married woman needs *the assistance* of her husband *in order to litigate* a cause of action *belonging to the conjugal partnership.*" (Citations of cases follow beginning with *Vázquez* v. *Valdés et al.,* 28 P.R.R. 431, decided in 1920.) (Italics ours.)

In view of the facts in the record, or more properly stated, in view of the absence of facts in the record sufficient to decide the substantive right involved, the question to be decided by the trial court, in my opinion, should have been decided as a procedural problem of the plaintiff, nonjoinder of party, or complement of party for the "consent" of a

---

[1] Section 54 of the Code of Civil Procedure, 1933 ed., as well as the former Rule 17(d)(3) of the Rules of Civil Procedure of 1943, conditioned this exception upon the fact that the husband had deserted the wife.

[2] Section 1295 of the Civil Code does not define it, but states, that by virtue of the conjugal partnership the earnings or profits *indiscriminately* obtained by either of the spouses during the marriage, shall belong to the husband and wife, share and share alike, upon the dissolution of the marriage.

For the purpose of complying with the provisions of this § 1295 upon the dissolution of the marriage, the following § 1301 specifies the property that belongs to the conjugal partnership.

husband, if an elucidation of the necessary facts which was not made showed the need of such "consent."

I agree to the reversal of the judgment, which in substance, definitively dismissed the complaint with the view of the court that it was not subject to amendment, but for the reasons of a procedural nature which I have stated.

In conformance with the foregoing, I leave for the present, and for when in my judgment, it would be inevitable to consider and decide it, any opinion or expression as to whether the compensation or recovery of damages by a spouse as a consequence of personal injuries sustained by him or her, should be considered now as the separate property of that spouse.

I do not deem it necessary to make such a statement now because the problem raised is not one which will establish the concept of ownership or title of that property between a spouse on one hand, and that peculiar patrimony of property and interest called conjugal partnership on the other—as would be the case if we were considering an action for the dissolution of the marriage and distribution of accrued assets—but we are considering an action to claim or obtain such compensation or recovery.

And more particularly I abstain from expressing any opinion now under the circumstances of the record which I have announced since today's decision rejects and repudiates a basic rule of law in our civil code which has governed for almost half a century the family institution in the sensitive aspect of its economic unity.

It is difficult to conceive in a sole act, all the consequences related to the rule now established. Since in my opinion it is not necessary to confront the fact in this Court, if the law in force warrants a change it should preferably be done by legislative action so as to legislate integrally at one time on other areas which could be affected.

At the commencement of the 5th Legislature which has just come to an end, on March 11, 1965, S.B. 207 was presented at the Senate, amending § 1299 of the Civil Code to provide that the following is the separate property of each spouse: "that obtained as compensation for damages to his or her separate property and for personal injury." The bill amended also §§ 1308 and 1802. In the course of said 5th Legislature, neither of the houses approved the bill.